WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Spirit Master Funding IV LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Martinsville Corral Incorporated, Victor Spina, Amber Spina, William Spina, Beth Spina,<br><br>　　　　　　　Defendants. | No. CV-14-00720-PHX-GMS<br><br>**ORDER** |

Pending before the Court are the Motion for Summary Judgment by Defendants Martinsville Corral Incorporated, Victor Spina, Amber Spina, William Spina, and Beth Spina (Doc. 78) and the Motion for Partial Summary Judgment by Plaintiff Spirit Master Funding IV LLC. (Doc. 79.)  For the following reasons, the Court grants in part and denies in part Defendants' motion and grants in part and denies in part Plaintiff's motion.

## BACKGROUND

Martinsville Corral Incorporated ("MC Inc.") leases property ("the Property") from Spirit Master Funding IV LLC ("Spirit Master") to operate a restaurant, the Texas Corral & Grill Saloon in Shelbyville, Indiana.  Spirit Master is a real estate investment trust ("REIT") worth approximately $8.2 billion, representing investments in 2,600 properties across 49 states.  Defendants Victor Spina, Amber Spina, William Spina, and Beth Spina entered into an Unconditional Guaranty of Payment and Performance ("the Guaranty") in which they jointly and severally guarantee MC Inc.'s obligations under the lease agreement ("the Lease").

The Lease is 39 pages long with 13 pages of addenda. In one section, the Lease provides:

> Within [45] days after the end of each fiscal quarter and within [120] days after the end of each fiscal year . . . , [MC Inc.] shall deliver to [Spirit Master] (i) complete financial statements . . . including a balance sheet, profit and loss statement, statement of changes in financial condition and all other related schedules for the fiscal period then ended; and (ii) income statements for the business at the Property. All such financial statements shall be prepared in accordance with GAAP, and shall be certified to be accurate and complete by an officer or director of each Lessee Entity.

(Lease at 9.03(a), Doc. 30-1 at 19.) The financial reports MC Inc. submitted were often late and were not prepared in full accordance with GAAP.

Also pursuant to the Lease, MC Inc. is responsible for providing the funds to Spirit Master for all taxes and assessments imposed on the Property, including all real estate taxes. The Lease provides that "[MC Inc.] shall pay to [Spirit Master] on the first day of each month the amount that [Spirit Master] reasonably estimates will be necessary . . . to pay any and all real estate taxes for the Property." (Lease at 6.01(b), Doc. 30-1 at 13.) Spirit Master was then responsible for paying the real estate taxes, using the funds provided by MC Inc.: "[Spirit Master] shall pay or cause to be paid directly to the applicable taxing authorities any Real Estate Taxes then due and payable for which there are funds in the Tax Reserve . . . ."[1] (*Id.*)

The Lease allowed MC Inc. to directly appeal any property tax related to the Property. In early 2012, MC Inc. undertook a property tax appeal in connection with payments it had made on the Property. MC Inc. paid for and conducted the appeal. The tax appeal was successful, resulting in a significant reduction in the tax assessment on the Property.

In August 2012, MC Inc. received payment of $9,241.70 from Midland Loan

---

[1] Under the terms of the Lease, Spirit Master "may deposit all Tax Reserve funds in accounts insured by any federal or state agency and may commingle such funds with other funds and accounts of [Spirit Master]. Interest or other gains from such funds, if any, shall be the sole property of [Spirit Master]." (*Id.*) Thus, once Spirit Master gained possession of the funds MC Inc. provided to pay real estate taxes, Spirit Master was at liberty to profit off of those funds and comingle them before using them to pay the taxing authorities.

- 2 -

Services ("Midland"), the lender on the Property. Defendants allege that they believed that this payment was a result of their successful property tax appeal.

Several months later, on January 31, 2013, Tania Young, a Senior Asset Administrator at Spirit Master, sent an email to William Spina, stating that Midland had made a mistake in sending the $9,241.70 the previous August and asking that the money be returned to Midland. (Doc. 76-1 at Exh. G, PDF 104). William Spina responded that the most he could afford to pay in one month, in addition to his normal rent and taxes, was $1500. (*Id.* at Exh. H, PDF 109.) In April 2013, Daniel Rosenberg, Director of Asset Management at Spirit Master, sent a series of emails informing William Spina that he could send the funds in monthly installments, but Spirit Master would charge 10% interest on any amount outstanding after May 1, 2013. (*Id.* at Exh. H, PDF 106-07.)

As of August 13, 2013, Defendants had paid the $9,241.70 demanded by Spirit Master. Defendants did not pay any interest on the sum. At all times, MC Inc. remained current on all rent payments and real estate taxes.

On Friday, March 7, 2014, Daniel Rosenberg of Spirit Master sent an email to William Spina stating:

> [D]espite our numerous attempts, you have continuously refused to provide Spirit with the financial statements required under the lease. In addition, you refuse to pay the outstanding amounts owed on the property taxes. To the extent Spirit has not received the required financial statements and outstanding amounts by the end of business on Tuesday, March 11, 2014, we have instructed our counsel to proceed with legal action.

(*Id.* at Exh. I, PDF 115.)

On April 7, 2014, Spirit Master filed a Complaint alleging (1) breach of the Lease, (2) breach of the Guaranty, (3) breach of the implied covenant of good faith and fair dealing, and (4) unjust enrichment. (Doc. 1.)

On June 15, 2014, over two months after filing the Complaint, Spirit Master served Defendants with a "Notice of Default and Demand for Cure" as is required by Section 12.01(f) of the Lease. (Doc. 76-1 at Exh. K, PDF 133-35). The notice detailed two defaults: (1) failure to pay "interest in the amount of $924.17," and (2) failure to

1  provide financial statements and income statements for YTD Q1 2013, YTD Q2 2013,
2  and YTD Q3 2013 and failure to produce fully compliant (with Section 9.03(a) of the
3  Lease) statements for YTD Q4 2013 and YTD Q1 2014.  (*Id.* at Exh. K, PDF 134.)

4  On August 11, 2014, the Court partially granted Defendants' motion to dismiss
5  and ordered Counts 3 and 4 of the Complaint dismissed.  (Doc. 26.)

6  On August 29, 2014, the parties submitted a stipulation to amend the Complaint,
7  stipulating that Spirit Master could amend the Complaint without Defendants "waiving
8  their defenses relating to the timeliness, propriety, and relevance of the notices that were
9  served after the filing of Plaintiff's Complaint."  (Doc. 28 at 1.)  The Court granted the
10 stipulation, (Doc. 29,) and Spirit Master filed its Amended Complaint on September 3,
11 2014.  (Doc. 30.)

12 Spirit Master cites Section 12.02(e) of the Lease, which provides that if
13 Defendants default, Spirit Master may "accelerate and recover from [Defendants] all
14 Rental and other Monetary Obligations due and owing and scheduled to become due and
15 owing under [the Lease] both before and after the date of such breach for the entire
16 original scheduled Lease Term," and as such Spirit Master demands from Defendants
17 $542,143.09, which includes the interest to which Spirit Master claims to be entitled,
18 together with accelerated rent, late charges, interest, and "all assessments due and owing
19 under the terms of the Lease."  (Doc. 30 at ¶ 28-29.)

**DISCUSSION**

21 **I.   Legal Standard**

22 The Court grants summary judgment when the movant "shows that there is no
23 genuine dispute as to any material fact and the movant is entitled to judgment as a matter
24 of law."  Fed. R. Civ. P. 56(a).  In making this determination, the Court views the
25 evidence "in a light most favorable to the non-moving party."  *Warren v. City of*
26 *Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995).  "[A] party seeking summary judgment
27 always bears the initial responsibility of informing the district court of the basis for its
28 motion, and identifying those portions of [the record] which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).

**II.    Analysis**

   **A.    The $9,241.70 Paid to Defendants by Midland**

Spirit Master has not established that MC Inc. has ever been delinquent in its obligation under Section 6.01(b) of the Lease to pay Spirit Master the estimated amount owed for real estate taxes. As far as the record reveals, MC Inc. paid the real estate taxes for the Property, on time and in full, at all times.

It is unclear whether the error that was made in overpaying the taxes was the fault of Spirit Master or Midland. If Midland erroneously deprived Spirit Master of funds, at some point Spirit Master may have had a claim against Midland. In turn, if Midland erroneously paid funds to Defendants, Midland had the problem of seeking the return of those funds. At any rate, those funds did not constitute an outstanding obligation to pay real estate taxes. The Property's real estate taxes were timely paid to Spirit Master by MC Inc., in accordance with to the terms of the Lease. Rather, those funds constituted an allegedly erroneous payment which Defendants may or may not have had a legal duty to repay, but any such duty did not arise from the terms of the Lease.

/ / /

Moreover, Spirit Master does not and cannot point to any language in the Lease suggesting that in the event that Midland should accidentally send money to Defendants and that Midland should wish to see that money returned, Spirit Master is entitled to impose interest on that money pending its return. There is no evidence that the money sent by Midland constituted an outstanding real estate tax payment as opposed to a monetary sum sent in error. At this point, the sum has been returned voluntarily. Spirit Master identified no basis under the Lease for Spirit Master's claim for interest on that sum.

The Court therefore grants summary judgment to Defendants on Spirit Master's claims to the extent they are based on the "interest" Spirit Master has attempted to charge MC Inc.

### B.   Financial Statements

Defendants argue that MC Inc. substantially complied with the provisions of Section 9.03(a) of the Lease, which requires MC Inc. to submit financial statements to Spirit Master. (Doc. 78 at 14.) Defendants allege that Spirit Master has received all of the requested financial statements; however, Defendants do not allege that the financial statements were consistently submitted on time or that they were consistently GAAP compliant. (*Id.*) Rather, Defendants argue that any deficiencies with the financial reports do not constitute material breaches of the Lease. (*Id.* at 6-8.)   Alternatively, Defendants argue that Spirit Master did not provide proper notice with an opportunity to avoid litigation by curing the alleged default (*id.* at 11-13,) that Spirit Master waived its right to demand that the financial statements be GAAP compliant (*id.* at 13-14,) and that Spirit Master failed to allege in its Complaint or Amended Complaint or to provide notice that the financial statements were deficient for not being GAAP compliant. (*Id.* at 14-15.) Defendants further argue that Spirit Master has failed to establish that it was damaged. (*Id.* at 15-16.)

"[N]early all courts hold that, regardless of the language of the lease, to justify forfeiture, the breach must be 'material,' 'serious,' or 'substantial,'" and the Arizona

1  Supreme Court held that such is the case in Arizona: "a forfeiture for a trivial or
2  immaterial breach of a commercial lease should not be enforced." *Found. Dev. Corp. v.*
3  *Loehmann's, Inc.*, 163 Ariz. 438, 445-46, 788 P.2d 1189, 1196-97 (1990). "[A] court's
4  decision to permit termination must be tempered by notions of equity and common
5  sense." *Id.* at 445, 788 P.2d at 1196. Even "a material provision of a lease may be
6  breached in such a trivial manner that to enforce a forfeiture would be unconscionable
7  and inequitable." *Id.* at 446, 788 P.2d at 1197.

> To determine whether a breach is material, the Court must consider:
>
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated [by damages] for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

17 *Id.* at 446-47, 788 P.2d at 1197-98 (quoting Restatement (Second) of Contracts § 241).
18      Here, Spirit Master provides no basis upon which the Court could find that MC
19 Inc.'s failure to regularly submit its financial statements on time and in accordance with
20 GAAP specifications constitutes a material breach of the Lease. Spirit Master maintains
21 that MC Inc.'s tardy and non-GAAP-compliant submissions "deprived Spirit of a central
22 benefit of the Lease and the very lifeblood of Spirit's business – the ability to monitor the
23 value of its properties and make operational decisions accordingly." (Doc. 88 at 12.)
24 Spirit Master never provides specific facts but rather repeats the vague allegation that it
25 "relies on the financial statements to monitor the value of its investments and plan for
26 sales and purchases." (*Id.* at 14.) These allegations are insufficient to meet Spirit
27 Master's burden in opposing a motion for summary judgment. The party opposing
28 summary judgment "must set forth specific facts showing that there is a genuine issue for

trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Spirit Master fails to specify how the tardiness or non-GAAP-compliance of MC Inc.'s financial statements impeded Spirit Master as it made operational decisions. More to the point, Spirit Master fails to allege that it made any operational decisions to its financial detriment as a result of MC Inc. submitting its financial statements at a delay and/or without GAAP compliance. The Court therefore holds that MC Inc.'s failure to regularly submit its financial statements on time and in accordance with GAAP specifications does not constitute a material breach of the Lease. As such, the Court grants summary judgment to Defendants on the issue of whether Spirit Master can effect a forfeiture by accelerating the lease.

Although MC Inc.'s breaches were not material and do not justify acceleration of the lease, Spirit Master nonetheless can seek whatever damages, if any, it suffered as a result of the minor breaches. "[T]he victim of a minor or partial breach must continue his own performance, while collecting damages for whatever loss the minor breach has caused him." *Zancanaro v. Cross*, 85 Ariz. 394, 400, 339 P.2d 746, 750 (1959).

Spirit Master attempts to shift the burden of proving damages to Defendants, stating that "Defendants fail to prove that Spirit has not been damaged by their breaches." (Doc. 88 at 13.) Damages are an essential element of an action for breach of contract, and thus it is incumbent upon *Spirit Master* to establish the existence of damages. "To bring an action for the breach of the contract, the plaintiff has the burden of proving the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 112 Ariz. 184, 185, 540 P.2d 656, 657 (1975). Spirit Master asserts that it "has had to expend considerable resources, among them, attorneys' fees,[2] in pursuing the timely submission

---

[2] Spirit Master claims that it is "entitled to recoup its attorneys' fees incurred to enforce the Lease Agreement under Section 17.07." (Doc 79 at 10.) Section 17.07 of the Lease provides that "[i]n the event of any judicial or other adversarial proceeding concerning this Lease, *to the extent permitted by Law*, [Spirit Master] shall be entitled to recover all of its reasonable attorneys' fees and other Costs . . . ." (Doc. 30-1 at PDF 40) (emphasis added). In making a determination of what is reasonable and awardable under the lease, as well as what may be awardable under state statute, the Court would also likely

- 8 -

of financial statements in GAAP format." (Doc. 79 at 10.) Spirit Master points to William Spina's deposition testimony, in which he admitted to receiving emails from Spirit Master requesting delinquent financial statements. (Doc. 87 CSOF at 11 ¶ 9; Doc. 87-1 at PDF 90-93.) Spirit Master also points to Daniel Rosenberg's deposition testimony, in which he states that he called and emailed William Spina on multiple occasions and had a difficult time getting in touch with him. (Doc. 87 CSOF at 12 ¶ 12; Doc. 87-1 at PDF 255-56.) Viewing the evidence in the light most favorable to Spirit Master, this evidence is sufficient to establish a question of fact as to whether Spirit Master was damaged by MC Inc.'s immaterial breaches of the Lease.

Defendants argue that Spirit Master waived its right to demand that the financial statements be GAAP compliant. (Doc. 78 at 13-14; Doc. 85 at 9-11.) Spirit Master responded that the Lease provides that "[n]o provision of this Lease shall be deemed waived or amended except by a written instrument . . . signed by the party against which enforcement of such waiver or amendment is sought." (Doc. 88 at 17 (citing the Lease, Doc. 30-1 at Section 17.14.)) Defendants advanced no argument challenging the enforceability of Section 17.14. The Court therefore assumes that Section 17.14 is enforceable and rejects the argument that Spirit Master waived its right to demand that the financial statements be GAAP compliant.

However, Defendants also argue that Spirit Master failed to allege in its Complaint or Amended Complaint and failed to provide notice that Spirit Master was basing its claims in part on the non-GAAP-compliance of the financial statements. (Doc. 78 at 14-15.) Indeed, there is no mention of GAAP compliance in the Complaint or the Amended Complaint, and both the Breach of Contract claim and the Guaranty claim complain only that MC Inc. failed to "timely" provide financial statements. (Doc. 30 at ¶ 35, ¶ 41.) The March 7, 2014 email from William Spina made no mention of GAAP compliance. (Doc. 76-1 at Exh. I, PDF 115.) The June 15, 2014 Notice of Default likewise failed to provide Defendants with notice that non-GAAP-compliance was a breach for which Spirit Master

---

consider Defendants' successful refutation of Plaintiff's forfeiture attempt.

1 was suing. (Doc. 76-1 at Exh. K, PDF 133-35). Thus, the only non-material breaches at issue in this lawsuit involve the untimeliness of the financial statements, not their non-GAAP-compliance.

Defendants argue that Spirit Master failed to properly provide notice in the manner required by Sections 12.01(f) and 15.01 of the Lease. (Doc. 78 at 11-13.) Section 15.01 provides that notice must be written, must be delivered according to certain specifications, and must be sent to MC Inc. at a certain address, with a copy sent to its legal counsel. (Doc. 30-1 at 36.) Section 12.01(f) provides that Spirit Master must give notice and then allow a period of at least thirty days to "correct or cure" a breach of the Lease. (*Id.* at 30.) Spirit Master provided no proper notice, as the informal emails to William Spina alone do not comply with Section 15.01, and the Notice of Default was sent two months after the lawsuit was filed, thereby depriving Defendants of the opportunity to cure and avoid litigation. However, Section 12.01(f) applies only where it is "within the reasonable power of [Defendants] to promptly cure" the breach. Here, the only breach that remains viable is MC Inc.'s failure to submit timely financial statements. Once those statements are late, submitting tardy statements cannot "cure" the lateness, and Defendants remain liable for damages that accrued as a result of the delay in submission, if any. Because there is no way to "cure" a breach based on tardiness, Section 12.01(f) does not apply.

### C. Breach of the Guaranty

To the extent that Spirit Master can prove damages as a result of MC Inc.'s failure to submit timely financial statements, the Spinas may be liable under the terms of the Guaranty. Summary judgment is therefore denied on the Guaranty claim.

### CONCLUSION

The interest that Spirit Master seeks from Defendants is not owed to Spirit Master under the terms of the Lease, and Defendants owe Spirit Master no outstanding monetary obligation under the Lease.

///

1  MC Inc.'s failure to consistently submit timely and GAAP-compliant financial statements is a breach of Section 9.03(a) of the Lease, but the breach is not a material breach justifying forfeiture, and Spirit Master is not entitled to acceleration of the Lease.

Spirit Master failed to provide notice that its claims were based in part on non-GAAP-compliance and failed to base claims on non-GAAP-compliance in its Complaint and Amended Complaint, and therefore GAAP compliance is not at issue in this lawsuit.

A genuine issue of material fact exists as to whether Spirit Master suffered damages as a result of MC Inc.'s immaterial breach in failing to submit timely financial statements. Therefore summary judgment is denied on both the Breach of Contract claim—to the extent it seeks actual damages—and the Guaranty claim.

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment by Defendants Martinsville Corral Incorporated, Victor Spina, Amber Spina, William Spina, and Beth Spina (Doc. 78) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment by Plaintiff Spirit Master Funding IV LLC (Doc. 79) is **GRANTED IN PART AND DENIED IN PART**.

Dated this 21st day of March, 2016.

_____
Honorable G. Murray Snow
United States District Judge