WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Spirit Master Funding IV LLC,<br><br>Plaintiff,<br><br>v.<br><br>Martinsville Corral Incorporated, Victor Spina, Amber Spina, William Spina, Beth Spina,<br><br>Defendants. | No. CV-14-00720-PHX-GMS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

On August 11, 2016, this matter was tried to the Court without a jury. Pursuant to Federal Rule of Civil Procedure 52, the Court hereby makes its findings of fact and conclusions of law.

## BACKGROUND

This case arises out of a lease agreement (the "Lease Agreement") between Plaintiff Spirit Master Funding IV LLC ("Spirit Master") and Defendant Martinsville Corral Incorporated ("MCI"). Defendants Victor Spina, Amber Spina, William Spina and Beth Spina are the guarantors of the lease. Plaintiff filed suit in this Court on April 7, 2014, alleging that Defendants had breached the Lease Agreement. Early proceedings in litigation disposed of several of Plaintiff's claims. After competing motions for partial summary judgment, the Court found that MCI had, by failing to submit timely financial statements, committed a breach of the lease that was not sufficiently material to allow foreclosure.

/ / /

1    In the Final Pretrial Order of June 11, 2016, the parties stipulated that the only contested issue of fact was "[w]hether Plaintiff incurred damages as a result of Martinsville's failure to submit timely financial statements." The only contested issue of law was "[w]hether Spirit [Master] is entitled to recover attorneys' fees as damages." The parties disagree as to whether this question should be answered by Arizona or Indiana law.

**FINDINGS OF FACT**

1. The Lease Agreement contains a choice of law provision providing that "[t]his Lease shall be governed by, and construed with, the laws of the state in which the Property is located, without giving effect to any state's conflict of law principles." (Lease Agreement § 17.19.)

2. The Property to which the Lease Agreement refers is located in the state of Indiana.

3. The Lease Agreement was attached to Plaintiff's Complaint, filed on April 7, 2014.

4. Spirit Master's Response to MCI's Motion to Dismiss, filed on June 16, 2014, contained no references or citations to Indiana law.

5. The Lease Agreement was attached to Plaintiff's Amended Complaint, filed on September 3, 2014.

6. On September 18, 2015, Plaintiff submitted a Motion for Partial Summary Judgment, which included two citations to Indiana cases and, in a footnote, a reference to the Lease Agreement's choice of law provision. (Doc. 79 at 7 & n.2.)

7. On March 21, 2016, this Court ruled that MCI had breached the Lease Agreement by its failure to submit timely financial statements, but that this breach was not a material breach.

8. On March 21, 2016, this Court ruled that Spirit Master's damages as a result of this breach were those, if any, "that accrued as a result of the delay in submission" of the financial statements.

9. On March 21, 2016, this Court ruled that a genuine issue of material fact

1  existed as to whether Spirit Master suffered damages as a result of MCI's failure to
2  submit timely financial statements.

3    10. On June 10, 2016, Plaintiff submitted Proposed Findings of Fact, which
4  included six citations to Indiana cases and, in a footnote, a reference to the Lease
5  Agreement's choice of law provision. (Doc. 104 at 4 & n.1, 5.)

6    11. As of August 29, 2016, Spirit Master has not presented evidence as to the
7  amount, if any, of Spirit Master's damages as a result of MCI's failure to submit timely
8  financial statements apart from a claim to recover its attorneys' fees pursuant to the lease.

9    12. The Lease Agreement provides that: "[I]n the event of any judicial or other
10 adversarial proceeding concerning this Lease, to the extent permitted by Law, Lessor
11 shall be entitled to recover all of its reasonable attorneys' fees and other Costs in addition
12 to any other relief to which it may be entitled. In addition, Lessor shall, upon demand, be
13 entitled to all attorneys' fees and all other Costs incurred in the preparation and service of
14 any notice or demand hereunder, whether or not a legal action is subsequently
15 commenced." (Lease Agreement § 17.07.)

## CONCLUSIONS OF LAW

17    1. The Court must apply Indiana law to determine whether and to what extent
18 either party may recover attorneys' fees.

19    Plaintiff seeks attorneys' fees as damages in accordance with the terms of the Lease
20 Agreement. Under Indiana law, attorneys' fees may be awarded pursuant to a contractual
21 provision, subject to a judicial determination of reasonableness. Absent a contract, statute,
22 or other exception, however, a court has no discretion to award attorneys' fees to a
23 prevailing party. *See Kokomo Med. Arts Bldg. P'ship v. William Hutchens & Assocs.*, 566
24 N.E.2d 1093, 1096 (Ind. Ct. App. 1991). Under Arizona law, by contrast, a court may
25 award reasonable attorneys' fees to a prevailing party. Ariz. Rev. Stat. Ann. ("A.R.S.") §
26 12-341.01(A) (2016). Additionally, Arizona law provides for contractual modification of
27 the default statutory rule. *Id.* Therefore, while Plaintiff has the potential to recover
28 attorneys' fees pursuant to the Lease Agreement under either state's law, Defendants could

1  recover fees under Arizona law if determined to be the prevailing party.

2  A federal court sitting in diversity applies the choice of law rules of the state in which it sits. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). As this Court sits in Arizona, it applies Arizona choice of law rules.[1] In a contract action, Arizona follows the Restatement (Second) of Conflict of Laws ("Restatement"). *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 266, 77 P.3d 439, 441 (2003). Where, as here, the contract includes a choice of law provision, § 187 of the Restatement provides the test for whether that provision is "valid and effective." *Id.* (quoting *Cardon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 207, 841 P.2d 198, 202 (1992)). Under § 187, a court must first decide whether the "particular issue"—here, attorneys' fees—"is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Restatement § 187(1). If the answer to that question is yes, then the choice of law clause is valid and effective. *See Cardon*, 173 Ariz. at 203–04. If the answer is no, then a court must still find the provision valid and effective unless one of two conditions hold: Either the state chosen in the provision "has no substantial relationship to the parties or the transaction and there is no reasonable basis for the parties' choice," or application of the chosen state's law "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of" the choice of law provision. Restatement § 187(2).

Here, the first step in the Restatement inquiry answers the question. Arizona statutory law on the issue of attorneys' fees expressly allows for contractual provisions to

---

[1] The Lease Agreement's choice of law provision does state that it is to be applied "without giving effect to any state's choice of law provisions." Courts generally do not read such language as foreclosing a threshold analysis of the enforceability of the clause itself. *See, e.g.*, *Berry Plastics Corp. v. Protecto Wrap Co.*, No. 3:12-cv-73-RLY-WGH, 2013 WL 772871, at *2–3 (N.D. Ind. Feb. 28, 2013) (noting that a literal reading of the language "would already validate" a choice-of-law provision "without analyzing it"); *Swanson v. Image Bank, Inc.*, 206 Ariz. 264, 266 n.2, 77 P.3d 439, 441 n.2 (2003) (finding a literal reading to be "unsound"). The Court will therefore proceed with the analysis under Arizona choice of law principles, while noting that ultimately Indiana law applies under either approach.

- 4 -

modify the default statutory rule. *See* A.R.S. § 12–341.01(A) (2016) ("[T]his section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney fees."); *Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 378, ¶ 26, 35 P.3d 426, 432 (App. 2001).[2] The choice of law provision in the Lease Agreement is therefore valid and effective, and in accordance the Court applies Indiana law.

2. Plaintiff is not estopped from asserting that Indiana law controls.

A litigant may be estopped from asserting inconsistent positions in the same or different litigation under the doctrine of judicial estoppel. This doctrine "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks and citations omitted). In federal court, the federal law of judicial estoppel applies. *See Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 603 (9th Cir. 1996). Defendants argue that Plaintiff should be estopped from arguing that Indiana law applies, based on Plaintiff's repeated references throughout this lawsuit to Arizona law. Under Ninth Circuit precedent, however, this argument fails.

The Ninth Circuit looks to three factors, originally formulated by the Supreme Court in *New Hampshire v. Maine*, to determine whether to apply judicial estoppel. *See United States v. Kim*, 806 F.3d 1161, 1167 (9th Cir. 2015). According to the Ninth Circuit:

> When determining whether judicial estoppel is warranted, we look to three factors: (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) whether the party succeeded in its prior position, because "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations'"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Id.* (quoting *New Hampshire*, 532 U.S. at 750–51) (internal quotation marks and citations

---

[2] Even if this were not so, it is clear that Indiana has a material interest in the matter, and one at least as great as that of Arizona. The defendants are all domiciled in Indiana, and the subject matter of the contract—the leased property—is located in Indiana. *See* Restatement § 188.

- 5 -

omitted). The Supreme Court cautioned that these factors do not represent a "precise formula," but merely "inform the decision" as to whether to apply judicial estoppel. *New Hampshire*, 532 U.S. at 743.

Here, although Plaintiff repeatedly cited Arizona law in its motions, Plaintiff never specifically argued that Arizona law, rather than Indiana law, applied. *See Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1505 (9th Cir. 1995) ("Although MCI cited California law in earlier papers, it never specifically asserted as a legal argument that California law was applicable."). Indeed, Plaintiff on several occasions throughout the litigation asserted the applicability of Indiana law—albeit far from clearly or forcefully. The Lease Agreement is attached to the Complaint and Amended Complaint, meaning that it, including its choice of law provision, is incorporated into those pleadings. *See* Fed. R. Civ. P. 10(c). Plaintiff cited Indiana cases alongside Arizona cases in its Motion for Partial Summary Judgment, (Doc. 79 at 7), and, in a footnote in that motion, noted the following: "Section 17.19 of the Lease Agreement states that the applicable law is the law of the 'state in which the Property is located[.]' In this case, the Property is located in Indiana. The principles of breach of contract in Indiana are, however, the same as Arizona." (*Id.* at 7 n.2.) The same footnote appears, along with citations to Indiana case law, in Plaintiff's Proposed Findings of Fact and Conclusions of Law. (Doc. 104 at 4 & n.1.) The arguments that Plaintiff now makes in favor of the application of Indiana law are, to be sure, clearer than its earlier equivocal references to Indiana law, but they are not "clearly inconsistent."

Even to the extent that Plaintiff, Defendants, and the Court itself cited Arizona law, there has been no ruling from the Court that Arizona law does apply. The parties did not brief or argue the issue, and the Court did not rule. *Cf. Gen. Signal Corp.*, 66 F.3d at 1505 ("Although . . . 'a reasonable person . . . would have assumed that the parties both thought California law applied to the substantive issues of this case,' the district court did not adopt the view that California law applied.").

With respect to the third factor, Plaintiff gained no advantage by citing Arizona law, as all of the Court's dispositive rulings have thus far favored Defendants. Counts

1  Three and Four of Plaintiff's Amended Complaint were dismissed at the motion to
2  dismiss stage. Plaintiff's claim for money damages related to an alleged overpayment on
3  real estate taxes was disposed of, in Defendants' favor, at the summary judgment stage.
4  Defendants' breach of the Lease Agreement was judged immaterial on the basis of
5  Arizona law, meaning that Plaintiff could not invoke the Lease Agreement's acceleration
6  clause. All that remained after summary judgment was a question of fact as to damages
7  caused by tardy financial statements.

8  MCI does assert that is suffered an unfair detriment as a result of Spirit Master's
9  failure to clearly invoke its contractual right to the application of Indiana law. MCI cites,
10 as the "most significant[]" detriment it suffered, its reliance on Arizona law to make a
11 strategic decision as to continued participation in litigation.[3] (Doc. 128 at 8–9.) MCI cites
12 no case holding such a situation prejudicial or unfairly detrimental, and the Court
13 likewise has found none. In this case, the connection between Spirit Master's actions and
14 MCI's strategic decisions is too attenuated to find an unfair detriment justifying estoppel.
15 Spirit Master never clearly asserted that Arizona law applied to the issue of attorneys'
16 fees, and arguably asserted the opposite. Even to the extent that MCI reasonably assumed
17 that Arizona law would apply, choosing to proceed with litigation to pursue attorneys'
18 fees was still speculative. The Court had yet to declare MCI the prevailing party on the
19 remaining issue of breach. *See* A.R.S. § 12-341.01 ([T]he court may award the *successful*
20 *party* reasonable attorney fees.") (emphasis added). MCI may well have suffered a
21 detriment. But the facts here do not show the *unfair* detriment that necessitates the
22 "'strong medicine' of judicial estoppel." *See Ah Quin v. Cty. of Kauai Dep't of Transp.*,
23 733 F.3d 267, 277 (9th Cir. 2013) (quoting *Ryan Operations G.P. v. Santiam-Midwest*
24 *Lumber Co.*, 81 F.3d 355, 364 (3d Cir. 1996) (quoting *Chaveriat v. Williams Pipe Line*
25 *Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993))).

26 Therefore, none of the factors this Court must consider in its judicial estoppel

---

[3] Though MCI makes this argument with respect to waiver, the Court finds it more relevant to the judicial estoppel analysis and will consider it in that context.

- 7 -

inquiry favor the application of that doctrine, and Plaintiff is not estopped from asserting that Indiana law should control.

  3. Plaintiff has not waived its contractual right to the application of Indiana law.

Waiver is a similar concept to estoppel, but the inquiry is distinct. While estoppel protects the integrity of the judiciary, *see Morgan Cty. Hosp. v. Upham*, 884 N.E.2d 275, 280 (Ind. Ct. App. 2008), waiver looks to whether a litigant has intentionally relinquished a known right. *City of Crown Point v. Misty Woods Props., LLC*, 864 N.E.2d 1069, 1079 (Ind. Ct. App. 2007).[4] Waiver may be made expressly or implied by conduct. *Id.*

The Indiana Supreme Court has not addressed the question of whether a litigant may waive a contractual choice of law provision through non-assertion of that right during litigation. The Court must therefore "make a reasonable determination of the result" the Indiana Supreme Court would reach in this case. *See Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

Indiana courts have, on a number of occasions, addressed the waiver of a choice of law *argument* in litigation. *See Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 146 (Ind. 1999); *Harvest Ins. Agency, Inc. v. Inter-Ocean Ins. Co.*, 492 N.E.2d 686 (Ind. 1986); *Storey v. Leonas*, 904 N.E.2d 229, 237 (Ind. Ct. App. 2009); *Holland v. Miami Sys., Inc.*, 624 N.E.2d 478, 482 (Ind. Ct. App. 1993). But there are two differences between each of these cases and the case before this Court. First, none of the Indiana cases cited involved

---

[4] The Court conducts its waiver analysis pursuant to Indiana law. The presumptively "valid and effective" contractual choice of law provision is the most logical starting point. Even if the Court were to find that Plaintiff waived that provision, Arizona choice of law rules may well still favor Indiana law as the place with the most significant relationship to this dispute. *See* Restatement § 188. Ultimately, though, a court need not engage in a full conflict of law analysis if the laws of the different jurisdictions do not differ on the relevant issue. *See Idaho v. Shoshone-Bannock Tribes*, 465 F.3d 1095, 1098 (9th Cir. 2006). While neither the Indiana Supreme Court nor the Arizona Supreme Court have spoken on how to assess the possible waiver of a choice of law provision, the decisions of courts in both states indicate no salient difference between general waiver law in the two states. *Compare, e.g.*, *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co., Inc.*, 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980) ("Waiver is either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment."), *with City of Crown Point*, 864 N.E.2d at 1079 ("Waiver is the intentional relinquishment of a known right . . . . Waiver may be shown by either express or implied consent, and the right may thus be lost by a course of conduct that estops its assertion.").

a *contractual* choice of law provision—rather, they involved choice of law arguments based on the location of the events in the case. Second, all the parties who were found to have waived their choice of law argument were seeking to assert out-of-state law instead of Indiana law, thus bringing them under the aegis of Indiana's Uniform Judicial Notice of Foreign Law Act, Ind. Code. § 34-38-4-4. The purpose of this statute is to provide "reasonable notice that the issue of another state's law will be raised"—notice which may not exist simply because another state has a connection to a dispute. *See Sword*, 714 N.E.2d at 146. Where, as here, there is a written contractual provision in addition to a connection to another state, it is less likely that a litigant will be caught off guard by a late-asserted choice of law argument. The question, therefore, is how to conduct the waiver analysis when a contractual choice of law provision exists. Indiana courts have not decided this issue.

Indiana courts have, however, dealt with the waiver of other contractual provisions. There is a well-developed set of Indiana cases on the waiver of the contractual right to arbitration. Indiana and numerous other jurisdictions have extended principles of waiver in the arbitration context to other contractual and statutory rights. *See Integrity Ins. Co. v. Lindsey*, 444 N.E.2d 345, 347–48 (Ind. Ct. App. 1983) (appraisal); *see also, e.g.*, *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 616 (7th Cir. 2009) (remand under 28 U.S.C. § 1407); *Russo v. Barger*, 239 Ariz. 100, 104, 366 P.3d 577, 581 (Ct. App. 2016) (forum selection); *Hennefer v. Butcher*, 182 Cal. App. 3d 492, 503 (1986) (appraisal). It is appropriate to apply these same principles to the waiver issue here. *See Integrity Ins. Co.*, 444 N.E.2d at 347 (applying waiver principles from arbitration to appraisal because both rights, "like any other contract right, may be waived . . . .").

Generally, "a party's right to arbitration may be waived by subsequent actions that are inconsistent with that right." *Kilkenny v. Mitchell Hurst Jacobs & Dick*, 733 N.E.2d 984, 986 (Ind. Ct. App. 2000). But, "waiver is a question of fact under the circumstances of each case." *Id. Capitol Construction Services v. Farah, LLC* provides guidance as to the general factors that point toward a finding of waiver. 946 N.E.2d 624, 628 (Ind. Ct. App.

2011). In the arbitration context, courts look to (1) the "timing of the arbitration request," (2) "if dispositive motions have been filed," and (3) whether the "litigant is unfairly manipulating the judicial system by attempting to obtain a second bite at the apple due to an unfavorable ruling in another forum." *Id.* A review of cases applying these factors indicates that mere inconsistent actions are often insufficient for a finding of waiver.

Indiana courts have found no waiver when litigants engaged in trial business that was either helpful as a prelude to arbitration or necessary for the party's interests. *See MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910–11 (Ind. 2004) (arbitration demand after six months of litigation, including filing of counterclaims and joinder of parties); *Capitol Constr. Servs.*, 946 N.E.2d at 628–29 (demand after twenty month long discovery process). On the other hand, courts have found waiver when litigants needlessly participated in litigation and only demanded arbitration after receiving an unfavorable ruling. *See St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co., Inc.*, 969 F.2d 585, 589 (7th Cir. 1992) (demand after ten months of litigation, following a loss on a dispositive motion); *JK Harris & Co., LLC v. Sandlin*, 942 N.E.2d 875, 884–85 (Ind. Ct. App. 2011) (demand after default judgment); *Tamko Roofing Prods., Inc. v. Dilloway*, 865 N.E.2d 1074, 1078–80 (Ind. Ct. App. 2007) (demand after trial had begun and other party had presented evidence).

Guided by these decisions, the Court finds no waiver here. Plaintiff's numerous citations to Arizona law are certainly inconsistent[5] with a desire to assert the contractual right to Indiana law. But during that stage of litigation, the predominant issue was the alleged breach of contract, and Plaintiff cited Arizona law while noting that "[t]he principles of breach of contract in Indiana are, however, the same as Arizona." (Doc. 79 at 7 n.2.) This same footnote also contained reference to the Lease Agreement's choice of law provision. By noting that the choice of law issue did not at this point matter, but that

---

[5] In the estoppel context, the question is whether a litigant's legal or factual positions are inconsistent with one another. In waiver, the question is whether a litigant's actions are inconsistent with a desire to assert a right. Thus, inconsistency in the waiver context does not necessarily imply inconsistency in the estoppel context. *Cf.* 28 Am. Jur. 2d *Estoppel and Waiver* § 35 (2016).

- 10 -

1  ultimately there was a contractual provision for Indiana law, Plaintiff effectively
2  preserved its right to assert the provision while indicating why such an assertion was not
3  yet being made.

4  Nor is there a "second bite at the apple" here. In the arbitration context, a litigant
5  who has already suffered defeat before invoking its arbitration rights seeks a new
6  proceeding in a new forum to decide issues that were already decided in the court system.
7  Here, however, the breach of contract issues that were already decided will not be
8  brought up again if the choice of law provision is enforced now. Plaintiff does not seek to
9  re-argue the issues it lost through the application of Arizona law; only to apply Indiana
10 law to the first issue in this litigation where choice of law makes a difference.

11 The Court recognizes that even if the principles of breach of contract are the same
12 in Arizona and Indiana, this issue could have been disposed of earlier. But in light of
13 Indiana's public policy interest in enforcing choice of law provisions, *see Allen v. Great*
14 *Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002), and the principles of waiver as
15 applied to these facts, the Court finds that Spirit Master has not waived its contractual
16 right to the application of Indiana law.[6]

17 4. Absent evidence of damages from Defendants' tardy submission of
18 financial statements, Plaintiff may not recover attorneys' fees.

19 Indiana generally follows the "American Rule," under which each party pays its
20 own attorneys' fees. *Siwinski v. Town of Ogden Dunes*, 949 N.E.2d 825, 832 (Ind. 2011).
21 This rule, may, however, be modified by statute or contract. *Id.* Indiana courts have, on
22 numerous occasions, approved of contractual fee-shifting provisions. *See, e.g.*, *Depeyster*
23 *v. Town of Santa Claus*, 729 N.E.2d 183, 190 (Ind. Ct. App. 2000) ("[I]n light of the

---

[6] Spirit Master emphasizes that the Lease Agreement contains a "non-waiver" provision, (Lease Agreement § 17.14), and that numerous Indiana cases state that such provisions are generally enforced. *See, e.g.*, *Weigand Constr. Co., Inc. v. Stephens Fabrication, Inc.*, 929 N.E.2d 220, 228 (Ind. Ct. App. 2010) ("[E]ven if the record showed undisputed facts that would support a waiver argument . . . this contractual provision would prevent us from finding that Weigand waived its right to enforce the Claim Provision."). But the cases that Spirit Master cites address waiver by pre-litigation conduct, not conduct during litigation, and are therefore not directly applicable. The Court does not rely on the non-waiver provision to find no waiver by Spirit Master.

- 11 -

agreement to the contrary, the American Rule does not apply in this instance . . . ."); *Parrish v. Terre Haute Sav. Bank*, 438 N.E.2d 1, 3 (Ind. Ct. App. 1982) ("It is well settled that one is entitled to attorney fees when provided for by statute *or* contract.").

The instant case, however, is somewhat unusual. Here, the *only* monetary damages Spirit Master currently seeks are the attorneys' fees they expended in pursuing this legal action, as their earlier claims based on alleged unpaid interest and on the Lease Agreement's acceleration clause were dismissed on summary judgment. The question, therefore, is not simply whether a contract may validly provide for fee shifting under Indiana law—as discussed above, it may—but whether an award of attorneys' fees can serve as the only basis for monetary damages recovered by an otherwise non-prevailing party. It cannot.

In *Rauch v. Circle Theatre*, the Indiana Court of Appeals decided a dispute similar to the one before this Court. *See* 374 N.E.2d 546, 549 (Ind. Ct. App. 1978). In that case, as in this one, a defendant was found to have breached a real estate lease agreement. *Id.* at 552. In that case, as in this one, no damages were awarded to the plaintiff as a result of the breach. *Id.* at 552–53. In that case, as in this one, there was a lease agreement providing for the defendant's reimbursement of the plaintiff's attorneys' fees. *Id* at 553. The Indiana Court of Appeals refused to award fees in accordance with that provision. *Id.* at 554. It noted:

> We feel that the policy evinced in Taylor that a lessor may recover his attorney's fees under a provision in the lease only where he makes a successful recovery on the merits of his complaint is a sound one. While a contractual provision allowing a recovery of attorney's fees by a party is not of itself violative of public policy, a construction of such a provision allowing a recovery in unsuccessful actions would create an unnecessary likelihood of frivolous or oppressive lawsuits. The purpose of allowing an award of attorney's fees in a civil action is to more fully compensate a party who has successfully enforced his legal rights rather than to merely provide that person with free access to the courts at the expense of his opponent. The allowance of attorney's fees to a party who has no enforceable claim for relief would not further this purpose.

*Id.*

*Rauch* is applicable here.[7] To award attorneys' fees to Spirit Master for an immaterial breach that caused no ascertained damages would be inconsistent with Indiana law and conceptually problematic. *Cf. Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, No. 13-CV-4348 (JMF), 2014 WL 3439620, at *14 (S.D.N.Y. July 15, 2014) ("Allowing Brown Rudnick to collect attorney's fees as damages simply by characterizing them as damages based on a breach of contract would 'create an exception that would swallow the "American Rule . . . ."'" (quoting *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 82 F. Supp. 2d 227, 236 (S.D.N.Y. 2000))); *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 (Tex. 2009) ("Neither law nor logic favors a rule that bestows 'prevailing party' status upon a plaintiff who requests $1 million for actual injury but pockets nothing except a jury finding of non-injurious breach; to prevail in a suit that seeks only actual damages—compensation for provable economic harm—there must be a showing that the plaintiff was actually harmed, not merely wronged."); *Brandt v. Superior Ct.*, 693 P.2d 796, 803 & n.1 (Cal. 1985) (noting that to treat attorneys' fees as consequential damages would "effectively allow[] the exception to swallow the American rule"). Spirit Master may not recover attorneys' fees as stand-alone damages.

## CONCLUSION

For the reasons stated above, the Court finds in favor of Defendants and enters judgment in their favor. The parties are to bear their own costs and attorneys' fees.

///
///
///
///
///
///

---

[7] It is true that a recent Indiana case, *Senior Market Dev., LLC v. Titan Fin. Grp., LLC*, 959 N.E.2d 935 (Ind. Ct. App. 2011) (Table), reached a result inconsistent with *Rauch*—a fact noted only by the dissent in that case. However, *Senior Market Development* was and remains an unpublished case, and it may not "be regarded as precedent [or] cited to any court" as the law of Indiana. Ind. App. R. 65(D).

**IT IS HEREBY ORDERED** finding in favor of Defendants and directing the Clerk of Court to enter judgment accordingly.

Dated this 14th day of September, 2016.

*[signature: G. Murray Snow]*

Honorable G. Murray Snow
United States District Judge